SEALED        04-1672-CBS

## AFFIDAVIT OF JEFFREY E. WOOD, JR.

I, Jeffrey E. Wood, Jr., being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for more than four years. I am currently assigned to the Violent Crime Task Force ("VCTF") investigating, among other things, drug and drug-related crimes in the Lawrence, Massachusetts area.

2. During my four plus years with the FBI, I have been involved in numerous investigations relating to a wide variety of suspected criminal activity including drug and firearms trafficking, bank robberies, armored car robberies, and kidnaping. I have received training in the field of narcotics enforcement and investigations including, but not limited to, training regarding the identification of common street drugs such as cocaine base, a/k/a "crack cocaine." Through my training, education, and experience, I have also become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs.

3. I am submitting this affidavit in support of an application for a criminal complaint charging **JORGE LUCRET, A/K/A "MINOR"** with two counts of distribution of crack cocaine in

DOCKETED 

violation of 21 U.S.C. §841 (a)(1). As is explained more fully below, **LUCRET** made two controlled sales of crack cocaine to a cooperating witness on September 22, 2003. Both sales were surveilled by law enforcement officers, consensually recorded, and videotaped inside a specially equipped car.

4. This affidavit is submitted for the limited purpose of establishing probable cause to believe that **LUCRET** committed the above-described offenses. Accordingly, I have not included each and every fact known to myself and other law enforcement officers involved in this investigation.

5. For the past six months, I have been the case agent on a multi-agency investigation of the Dome Dwellers, a violent street gang operating in Lawrence, Massachusetts. Since the beginning of the investigation, law enforcement agents have made numerous purchases of controlled substances and firearms from members or associates of the Dome Dwellers using various confidential informants and cooperating witnesses. All of the buys and many of the conversations leading up to them have been consensually recorded on audio and/or videotape.

6. The investigation into the crack cocaine trafficking of **LUCRET** was initiated on September 22, 2003 after a cooperating witness working for the FBI ("the CW") purchased heroin from another target in this investigation ("the Target"). The CW reported that, during that purchase, the Target told the CW that he/she could also provide the CW with crack cocaine.

7. The CW made a consensually recorded call to the Target at approximately 5:50 p.m. on September 22, 2003 to arrange a purchase of crack cocaine. After that call was completed, the CW reported that the Target had not been able to locate the crack cocaine but directed the CW to contact "Minor," from whom the Target stated the CW would be able to purchase crack. "Minor" was later identified as **JORGE LUCRET**.[1]

8. After getting off the telephone with the Target, the CW placed a recorded phone call to **LUCRET** at 978-390-3134. In that call, which was consensually recorded in Spanish, **LUCRET** agreed to sell the CW 14 grams of crack cocaine for $550 and told the CW to meet him on Oxford Street.

9. In anticipation of the meeting with **LUCRET**, I searched the CW and the car he would be driving. I then gave the CW a recording device, a transmitter, a small electronic scale, $550 in official government funds ("OGC"), and a car equipped with audio/video surveillance equipment and told the CW to drive to Oxford Street (where surveillance agents had already gone) and find **LUCRET**.

10. Surveillance agents saw the CW get to Oxford Street at

---

[1] A review of the recording from this telephone call shows that the Target had already hung up the telephone when the CW began speaking about **LUCRET**. When asked about this, the CW stated that he did not realize the Target had hung up the phone and that the Target had identified **LUCRET** during an earlier unrecorded conversation when agents were not present. The criminal complaint that is being sought is not based on statements provided by the CW but rather by the undersigned's review of the relevant audio and videotapes and other corroboration including the observations made of the transactions by surveillance agents.

appproximately 6:20p.m. After getting there, agents monitoring the transmitter (which were later reviewed by Lawrence Police Detective Richard Brooks, who is fluent in Spanish) heard an indiviudal later identified as **LUCRET** get into the CW's car and begin to speak.[2] **LUCRET** 's entry into the CW's car and his conversation with the CW was also consenually recorded and captured on video.

11. After **LUCRET** got into the car, he told the CW to drive to the intersection of Haverhill and Morton Streets in Lawrence. The CW pulled into a parking lot, gave **LUCRET** a portion of the buy money, and **LUCRET** left to meet his source of supply for the crack cocaine.

12. The CW watched as **LUCRET** went across the street to meet with his source. When **LUCRET** came back into the car, he provided the CW with a bag containing an off-white rocky substance that only weighed approximately 5.6 grams. Because **LUCRET** had agreed to sell the CW 14 grams of crack cocaine, the CW refused to provide him with the balance of the buy money and demanded that **LUCRET** get the rest of the drugs.

13. The CW was then surveilled back to a predetermined meeting location where he/she arrived at approximately 6:30p.m. I met with the CW and he/she provided me with a plastic bag

---

[2] I do not speak Spanish. I have reviewed tapes with Detective Brooks, who summarized the Spanish speaking portions of them for me while they were played. The information contained in this affidavit regarding conversations is therefore based on what Detective Brooks told me and my own review of those portions of the conversations that were in English.

contaning the suspected crack cocaine, the balance of the buy money ($160), and the body recorder, scale, and the transmitter. I searched the CW's person and the car to ensure that the CW had no controlled substances or cash on her/him. A videotape was also removed from the vehicle.

14. After debriefing the CW (who advised me he/she had purchased the drugs from **LUCRET** and gave me information about the buy), I directed the CW to contact **LUCRET** and attempt to purchase the rest of the drugs.

15. The CW placed another consensually recorded telephone call to **LUCRET** at approximately 6:55p.m. After completing the call, the CW told me that **LUCRET** had agreed to supply him with another 8.5 grams of crack.[3] After sending surveillance agents back to the Oxford Street area, I gave the CW $160 in OGC, the body recorder, transmitter, scale, and told him to return to Oxford Street in the undercover vehicle that had been equipped with a new videotape.

16. The CW returned to Oxford Street and, after some delay, met with **LUCRET**. **LUCRET** did not have 8.5 grams of crack cocaine but offered to sell the CW some individual "jums" or "rocks" of crack cocaine that he had in a bag. The CW refused and returned to the meet location for a second time where I took the OGC, the scale, and the recording equipment from him/her again.

---

[3] I also confirmed this information by reviewing the recording of the call with Detective Brooks.

17. When the CW got back to the meeting location for the second time, I told him/her to call **LUCRET**. The CW did and we overheard the CW and **LUCRET** arguing about the price for the balance of the crack. After they agreed on $250 for the remaining 8.5 grams of crack cocaine, I returned the recording equipment and transmitter to the CW and gave him/her $250 in OGC buy money.

18. The CW got back to Oxford Street (for the third time) at approximately 7:49p.m. and met with **LUCRET**, who advised the CW that they would have to wait for his source of supply nearby on Morton Street. Ultimately, the source did not arrive for nearly forty-five minutes. While they were waiting, the CW and **LUCRET** continued to argue about the price for the crack and the CW even called me from the car, claiming to **LUCRET** that I was his/her customer. I told the CW to wait for the drugs.

19. At approximately 8:30p.m., **LUCRET** received an incoming call on his cellular telephone and was seen leaving the CW's car. Agents watched **LUCRET** walk toward the liquor store parking lot and return several minutes later. After **LUCRET** got back in the car, the CW drove him to Oxford Street and completed the transaction. The video in the car shows **LUCRET** counting out amounts of what I later determined is crack cocaine and placing them in a bag on the CW's scale which he then gave to the CW.

20. The CW was then followed back to the meeting location where he/she handed me the body recorder, transmitter, the scale,

and another bag of an off-white rocky substance similar to what he/she gave me after the first meeting with **LUCRET**. I searched the CW and the car for controlled substances and cash again but found nothing.

21. I have reviewed the videotapes of the meetings that the CW had with **LUCRET** on September 22, 2003 and compared the image of the person with the CW to a photograph of **LUCRET** obtained from the Middlesex Sheriff's Department. I recognize **LUCRET** as the person in the video. This was also confirmed by another agent who knows **LUCRET**.

22. I have also inspected and field tested the contents of the two bags the CW obtained from **LUCRET** on September 22, 2003. The contents of both bags field tested positive for cocaine. Based on the color, texture, and appearance of the material in the bags, I also believe that both bags contained that particular form of cocaine base known as "crack cocaine." The DEA has also certified that both contained more than five grams of cocaine base.

23. Based on the forgoing, I believe there is probable cause to believe that, on two occasions on September 22, 2003, **JORGE LUCRET, A/K/A "MINOR,"** did distribute cocaine base, a/k/a "crack cocaine" in violation of Title 21, United States Code,

Section 841(a)(1).

Signed under the pains and penalties of perjury this 23rd day of February, 2004.

_____
JEFFEREY E. WOOD, JR.
Special Agent, FBI

Sworn to and subscribed before me this 23rd day of February, 2004

_____
MAGISTRATE JUDGE CHARLES B. SWARTWOOD III

SEALED

# United States District Court
## District of Massachusetts (Boston)
### CRIMINAL DOCKET FOR CASE #: 1:04-mj-01672-CBS-ALL *SEALED*
Internal Use Only

**Case title:** USA v. Lucret           **Date Filed:** 02/23/04
**Other court case number(s):** None
**Magistrate judge case number(s):** None

---

**Assigned to:** Magistrate Judge Charles B. Swartwood
**Referred to:**

**Defendant(s)**
------------------------

**Jorge Lucret** (1)

*aka*
**Minor** (1)

**Pending Counts**                                            **Disposition**
------------------------

None

**Highest Offense Level (Opening)**
----------------------------------------

None

**Terminated Counts**                               **Disposition**
-------------------------------

None

**Highest Offense Level (Terminated)**
--------------------------------------------

None

## Complaints

----------------

21:841(a)(1)Distribution of Crack Cocaine

## Disposition

----------------

## Plaintiff

--------------------

USA                                        represented by   **John A. Wortmann, Jr.**
United States Attorney's Office
John Joseph Moakley Federal
Courthouse
1 Courthouse Way
Boston, MA 02110
617-748-3100
Fax : 617-748-3965
Email: John.Wortmann@USDOJ.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|---|---|---|
| 02/23/2004 | 1 | MOTION to Seal as to Jorge Lucret by USA. (Bell, Marie) (Entered: 02/27/2004) |
| 02/23/2004 |  | Judge Charles B. Swartwood : Endorsement on motion ORDER entered granting 1 Motion to Seal Case as to Jorge Lucret (1) (Smith3, Dianne) (Entered: 02/27/2004) |
| 02/23/2004 | 2 | SEALED COMPLAINT as to Jorge Lucret (1). (Smith3, Dianne) (Entered: 02/27/2004) |
| 02/23/2004 | 3 | AFFIDAVIT of Jeffrey E. Wood, Jr. by USA as to Jorge Lucret (Smith3, Dianne) (Entered: 02/27/2004) |

₯JS 45 (5/97) - (Revised U.S.D.C. MA 2/7/02)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:** Lawrence    **Category No.** II    **Investigating Agency** FBI

**City** Lawrence    **Related Case Information:**

**County** Essex

Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   JORGE LUCRET    Juvenile:  ☐ Yes  ☐ No
Alias Name   MINOR
Address   137 OXFORD STREET LAWRENCE, MA
Birthdate: 8/30/78    SS # 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   Sex: MALE   Race: Hispanic   Nationalit US

**Defense Counsel if known:** _____    Address _____

Bar Number _____

**U.S. Attorney Information:**

AUSA   Peter Levitt ; John A. Wortmann, Jr.    Bar Number if applicable    534860

**Interpreter:**  ☐ Yes  ☑ No    List language and/or dialect: _____

**Matter to be SEALED:**  ☑ Yes  ☐ No

☑ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

Arrest Date _____

☐ Already in Federal Custody as of _____ in _____
☐ Already in State Custody at _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by: _____ on _____

**Charging Document:**  ☐ Complaint   ☐ Information   ☑ Indictment

**Total # of Counts:**  ☐ Petty ___  ☐ Misdemeanor ___  ☐ Felony  2

Continue on Page 2 for Entry of U.S.C. Citations

☑ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  2·23·04    Signature of AUSA: _____

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**   JORGE LUCRET

**U.S.C. Citations**

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | 21 USC 841(a) | DISTRIBUTION OF CRACK COCAINE | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:** _____

_____

_____